No. 86,479

RUTH A. BRACKEN, *Appellant,* v. DIXON
INDUSTRIES, INC., *Appellee.*
(38 P.3d 679)

Opinion filed January 25, 2002.

*David O. Alegria,* of McCullough, Wareheim & LaBunker, P.A., of Topeka, argued the cause and was on the briefs for appellant.

*J. Patrick Cremon,* of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., of Tulsa, Oklahoma, argued the cause, and *Monica L. Goodman,* of the same firm, and *Douglas G. Ott,* OBA, of Hall, Levy, DeVore, Bell, Ott & Kritz, P.A., of Coffeyville, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Employee appeals the district court's grant of summary judgment in favor of the employer in the employee's retaliatory discharge action.

Dixon Industries, Inc. (Dixon) instituted a drug testing policy in 1988 for the stated purpose of providing employees a safe and productive work place and providing customers with products of the highest quality. Under Dixon's drug testing policy, all prospective new hires were required to submit to preemployment alcohol and drug testing. Dixon also required employees to consent to alcohol and drug testing in certain circumstances, such as when there was an on-the-job accident involving the employee or when any employee was sent to the company doctor or hospital. Written consent was required prior to testing. Under the policy, any employee who tested positive or admitted to being under the influence of alcohol or drugs was terminated.

Ruth Bracken, an employee of Dixon for 18 years, complained to her supervisor in December 1994 that she was having pain in her hands and arms. Bracken did not request medical treatment. On April 12, 1995, Bracken asked her supervisor for time off to go to her doctor regarding the pain in her arms and hands. Her supervisor recommended that Bracken see a company doctor. Bracken made an appointment with and saw a company doctor for her complaint.

Previously, in May 1990, Bracken had visited the company doctor as a result of a work-related injury. Bracken was aware of the employer's no drug policy and consented to alcohol and drug testing. The result at that time was negative.

When Bracken arrived at the doctor's office on April 12, 1995, the doctor took a urine sample for purposes of drug testing. The preliminary immunoassay analysis came back positive for cannabis. When Dixon received the positive drug test result, it requested a confirmatory test. The second test, a chromatography/mass spectrometry test also came back positive for cannabis.

Bracken admitted to her employer that she had smoked marijuana the night before she went to the company doctor. Pursuant to company rules, on April 21, 1995, Bracken was discharged because she had tested positive for marijuana.

Bracken claimed she was a good employee; therefore, the positive drug test was not the real reason she was discharged.

Bracken filed a retaliatory discharge claim against Dixon. Bracken claimed she was a good worker and had been discharged because her employer anticipated she was going to file a workers compensation claim. The employer asserted Bracken was terminated because she had violated its no drug policy. The district court noted that the material facts were not in dispute, found that Bracken had been discharged because she had violated the employer's no drug policy and, following the rationale in *Lay v. Horizon/CMS Healthcare Corp.*, 60 F. Supp. 2d 1234 (D. Kan. 1999), granted Dixon's motion for summary judgment.

## Summary Judgment

Summary judgment is appropriate when the pleadings, deposi-

tions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

Bracken claims that Dixon fired her because of her on-the-job injury and in anticipation of her filing a workers compensation claim. To prevail on a retaliatory discharge claim the employee must be within the exception to the common-law doctrine of employment at will. Under the employment-at-will doctrine, an employer can terminate an employee "for good cause, for no cause, or even for a wrong cause, without incurring liability to the employee for wrongful discharge." *Morriss v. Coleman Co.*, 241 Kan. 501, 508, 738 P.2d 841 (1987). One exception to the employment-at-will doctrine is recognized when an employee is discharged in retaliation for filing a workers compensation claim, *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981), or in anticipation of the employee filing a workers compensation claim, *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 752 P.2d 645 (1988).

To establish a typical prima facie case of retaliatory discharge, the plaintiff must show (1) he or she filed a claim for workers compensation benefits or sustained a work-related injury for which he or she could assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's compensation claim or the fact that he or she had sustained a work-related injury for which he or she could file a future claim for benefits; (3) the employer terminated his or her employment; and (4) a causal connection existed between the protected activity or injury and the termina-

tion. *Huffman v. Ace Elec. Co., Inc.*, 883 F. Supp. 1469, 1475 (D. Kan. 1995); *Chaparro v. IBP, Inc.*, 873 F. Supp. 1465, 1472 (D. Kan. 1995); *Rosas v. IBP, Inc.*, 869 F. Supp. 912, 916 (D. Kan. 1994). Proof of a prima facie case raises " 'a rebuttable presumption' " of a retaliatory intent. See *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994) (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 [10th Cir. 1988]); *Rosas*, 869 F. Supp. at 916.

There is no dispute that the first three elements of a prima facie case are present here. Bracken contends the fourth element, a causal connection between the protected activity or injury and her termination, involves material disputed facts. According to Bracken, Dixon's motive for firing her is a question to be decided by a trier of fact.

Kansas has adopted the burden-shifting approach applied in discrimination cases for use in analyzing state-law retaliatory discharge claims. *Ortega v. IBP, Inc.*, 255 Kan. 513, 526, 874 P.2d 1188 (1994). Once the plaintiff employee establishes a prima facie case, it becomes the employer's burden to produce a legitimate, nondiscriminatory reason for the discharge. *Huffman*, 883 F. Supp. at 1475.

To avoid summary judgment after the employer provides its reason for the discharge, the employee must assert specific facts establishing a triable issue as to whether the employer's reason for discharge is a mere cover-up or pretext for retaliatory discharge. *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994). "If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate." *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 798 (10th Cir. 1993), *overruled in part on other grounds Buchanan v. Sherrill*, 51 F.3d 227, 229 (10th Cir. 1995). On the other hand, should the plaintiff come forth with a prima facie case and evidence that the defendant's reasons are pretextual, the case must go to the jury. *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995).

In a retaliatory discharge action for the filing of a workers compensation claim, the plaintiff need not present evidence that is clear and convincing in nature at the summary judgment stage. Plaintiff

can successfully oppose a motion for summary judgment by a preponderance of the evidence. See *Ortega*, 255 Kan. at 519.

A plaintiff can avoid summary judgment by showing a pattern of retaliatory conduct beginning with the filing of a workers compensation claim to termination, notwithstanding such conduct predates the period of limitation for such action. *Rebarchek v. Farmers Co-op. Elevator & Mercantile Ass'n.*, 272 Kan. 546, Syl. ¶ 6, 35 P.3d 892 (2001).

Before this court, Bracken asserts the following facts, viewed in the light most favorable to her, show a causal relationship between the exercise of her rights and her termination, meeting the elements of a prima facie case of discrimination. Dixon asserts that Bracken's evidence of a causal connection is based only on her thoughts and beliefs. See *Blackwell v. Shelter Mut. Ins. Co.*, 109 F. 3d 1550 (10th Cir. 1997) (An employee's beliefs and feelings were insufficient to establish the required nexus between the employee's discharge and any protected activity.).

First, Bracken claims that the timing of the drug testing with her eventual termination is suspect. Bracken had been a good employee for more than 18 years and had work-related injuries before but had never filed a workers compensation claim. According to Bracken, the injury that caused her to be fired actually occurred in December 1994 and she was not tested for drug use until April 1995 when she requested workers compensation benefits. Dixon argues that timing alone is insufficient to establish a causal connection. Dixon points out that Bracken was not tested in December 1994 because she did not go to the company doctor. Dixon notes Bracken knew she would be drug tested if she went to the company doctor because she had previously been drug tested. Bracken admitted she smoked marijuana the night before, but did not think it would show up on the test results. Dixon asserts that under the circumstances, it had no reason to suspect Bracken would test positive for drugs.

Second, Bracken claims she was forced to see the company doctor after she asked for time off to see her own doctor; therefore, she had not consented to the drug test. Dixon points out that Bracken knew if she went to her own doctor she could still file a

workers compensation claim. It further noted that after she was terminated, Bracken continued to see the company doctor. Dixon argues that Bracken consented to the drug test.

Third, Bracken claims there was no evidence that Dixon consistently applied its drug policy and that the policy discriminates against injured workers. Under the policy, according to Bracken, the discipline for more serious offenses, such as working under the influence, can be merely disciplinary action up to and including discharge. Dixon asserts that it consistently applied its drug policy and that Bracken was fired for violating the drug policy by testing positive for drugs.

Bracken asserts there is a causal connection, because regardless of the severity of an accident at Dixon, as long as an injured employee does not seek workers compensation benefits, the employee is not drug tested. Dixon argues that this assertion twists the company's drug policy. Dixon stated that the trigger for a drug test is a visit to the company doctor, not the filing of a workers compensation claim.

Finally, Bracken alleges that Dixon attempted to deprive her of her legitimate workers compensation claim by falsely informing the insurance company that she did not timely report her injury, attempting to establish that she was not injured at work, and falsely depicting her job duties. Dixon contends this argument is based on misconstrued testimony. Dixon did not falsely inform the insurance company that Bracken had not timely reported her injury. Dixon merely testified that it did not report Bracken's claim as of December 15, 1994, because Bracken had not received medical treatment. Furthermore, it was Dixon's insurance company that requested a list of Bracken's job duties. In response to that request, Dixon prepared a jobs list and responded that it did not appear that Bracken had engaged in repetitive type work.

We note that Bracken was aware of Dixon's no drug policy. She was aware that she would be tested for drugs when she went to the company doctor. Bracken did not believe the marijuana she smoked the night before would show up on her drug test. In addition, Dixon was unaware that Bracken would test positive for drugs.

There is evidence that at least one other Dixon employee had tested positive for drugs and had been discharged. There were no known instances where an employee tested positive for drugs and was not discharged by the employer.

The material facts were not in dispute. Dixon has a drug testing policy which it uniformly applies to its employees. Bracken chose to go to the company doctor, thus triggering the drug testing. Bracken's drug test was positive. She was terminated because she tested positive. There is no inference of discriminatory intent in Dixon's actions. Even viewing the evidence in the light most favorable to Bracken, Bracken fails to show any evidence of substance which suggests Dixon's drug testing policy was used as a pretext for terminating employees who avail themselves of workers compensation benefits.

Affirmed.

DAVIS, J., not participating.

BRAZIL, Chief Judge Retired, assigned.