(81 P.3d 450)

No. 90,266

ROGER HANDY,. *Appellant*, v. WILLIAM O. REED, JR., M.D., *Appellee*.

Opinion filed December 24, 2003.

*M. Warren McCamish*, of Williamson & Cubbison, of Kansas City, for appellant.

*Michael B. Lowe* and *Christopher J. Sherman*, of Payne & Jones, Chtd., of Overland Park, for appellee.

Before MARQUARDT, P.J., LEWIS, J., and LARSON, S.J.

LARSON, J.: In this medical malpractice case, Roger Handy appeals from the trial court's grant of summary judgment in favor of William O. Reed, Jr., M.D., based upon the bar of the statute of limitations, K.S.A. 60-513(a)(7), and the 4-year statute of repose, K.S.A. 60-513(c).

Because the facts, dates, and reasons for actions taken by Handy are critical to the decision we reach, they will be set forth in considerable detail.

### Factual and procedural background

In September 1994, Handy, while working as a certified nurse assistant and home health aide, suffered a rotator cuff injury which

ultimately required surgery. Following rehabilitation treatment, Handy returned to his former employment. Shortly thereafter, Handy was injured again and a second rotator cuff surgery was performed. Rehabilitation treatment again was performed, and Handy again returned to work. In 1996, Handy suffered a third work-related shoulder injury. Handy's medical care was covered by his employer's workers compensation carrier during this period.

The third shoulder injury resulted in Handy first being sent to Occupational Health Service, which referred Handy to Dr. Reed in July 1996. Dr. Reed initially recommended only physical therapy but ultimately performed a third rotator cuff surgery on Handy on October 16, 1996. After this surgery, Handy was treated with physical therapy and then underwent a work-hardening program.

Handy's progress was followed by Dr. Reed until January 20, 1997, when he released Handy to return to work without any restrictions. Prior to his release, Handy had told his physical therapist he felt something unusual in his shoulder during the work-hardening exercises. He attempted to further contact Dr. Reed, but a break in communications existed and no further contact between the two resulted.

Handy felt there was still something wrong with his shoulder which would not allow a return to work without restriction. Handy applied for social security disability in January 1997 and was subsequently examined by several physicians who felt it was possible he still had a rotator cuff tear. Handy's attempt to obtain a second opinion was apparently hampered by a workers compensation controversy over coverage. It was not until May 1998 that the administrative law judge authorized further treatment by Dr. Larry Frevert.

In February 1998, Dr. Reed rendered an opinion in the ongoing workers compensation case based on a recent arthrogram and MRI but without seeing Handy. It was his opinion Handy might have a pinhole or suture tract communication in the rotator but did not have a significant tear and did not need or require further surgery.

It appears that Handy had seen Dr. Frevert on December 10, 1997, for a followup after an arthrogram of his shoulder. Dr. Frevert's letter of that date states the arthrogram revealed a "full thick-

ness rotator cuff tear." Dr. Frevert noted he had discussed Handy's condition with him and informed him of the need and risks for surgery to repair his injury.

Subsequent to the approval for additional medical treatment ordered by the administrative law judge, Handy again saw Dr. Frevert on July 23, 1998. A report of this consultation reiterates the existence of the rotator cuff tear and indication of Handy's understanding of his condition. The report further indicated that it was unrealistic to expect Handy to return to work in his previous occupation regardless of the outcome of his subsequent surgery.

Dr. Frevert did a fourth surgery on Handy on September 4, 1998. A significant rotator cuff tear was repaired. On November 20, 1998, Dr. Frevert informed Handy he would not be able to return to his former employment and as to "specific restrictions at this time, he is basically at no use of his left arm." The record reflects numerous additional office visits by Handy to Dr. Frevert and ultimately in a letter to Handy's workers compensation counsel opined on June 28, 1999, that Handy "has somewhere between a twenty-five and thirty percent (25 and 30%) impairment at the level of the shoulder of the left arm."

Handy's affidavit in response to Dr. Reed's motion for summary judgment states that he sought legal counsel concerning Dr. Reed's care subsequent to the November 20, 1998, appointment with Dr. Frevert. Handy was informed that any claim against Dr. Reed would only be that he lost a significant chance for a better recovery because of the manner in which Dr. Reed managed the rehabilitation of his shoulder and that any recovery would be subject to the statutory lien in favor of his former employer's workers compensation carriers. His affidavit acknowledges that he knew his claim could not be prosecuted economically as long as the lien existed.

Handy's first case (*Handy I*) was filed against Dr. Reed on September 5, 2000, but Dr. Reed was never served during the initial 90 days after the filing or during the 30-day extension Handy obtained. Handy contends this was because his workers compensation claim was still unresolved. On January 3, 2001, the district court granted Handy's request for a voluntary dismissal of *Handy I* "with-

out prejudice subject to refiling within a six-month period from this date." It is important that Dr. Reed never appeared in *Handy I* and was *not* served with process in *Handy I*.

Exactly 6 months later on July 3, 2001, Handy filed a second malpractice action against Dr. Reed (*Handy II*) reasserting the same claims he had made in *Handy I*. Handy had settled his workers compensation claim and obtained waiver of the statutory lien by the compensation carrier, and Dr. Reed was served with process in *Handy II* on October 21, 2001.

Dr. Reed answered. After discovery, Dr. Reed moved for summary judgment based on several statute of limitations and statute of repose defenses. Handy responded, oral argument was held, and on January 2, 2003, the trial court issued its memorandum decision granting Dr. Reed's summary judgment motion and dismissing the case. The trial court stated:

"This motion raises two points as the basis of the position of the defendant; one, whether this action is time-barred for not having been commenced within the two (2) year period wherein the plaintiff's injuries were reasonably ascertainable, and two, whether the plaintiff's claim falls outside the four (4) year statute of repose. After much consideration, the Court finds and holds that Summary Judgment is granted as to both issues.

"Plaintiff maintains that the case of *Jones v. Neuroscience Associates*, 250 Kan. 477 (1992) is on point as to the determination of when a plaintiff's injuries are reasonably ascertainable, and that this determination is a 'jury question.' The Court has examined the *Jones* case in detail, and is convinced that the facts of that case greatly differ from the case at bar. In *Jones* the experts [doctors] were in dispute as to this issue. In this case it seems clear that the injuries were known, were told to the plaintiff, and that from that point it was more than two years before the filing of the case.

"The plaintiff further argues that this case was dismissed, and then refiled, after input from the Court. While this may be true, it is clear that under Kansas law, a case is not commenced until the defendant is served. As that act did not take place until after the Statute of Repose time period, the second basis for summary is also well founded."

## Contentions of Handy

Handy has timely appealed. He contends (1) the granting of summary judgment was erroneous because there are controverted issues of material facts existing in the case, and (2) he properly relied on the trial court's authority under K.S.A. 60-241(a)(2) to

enter the order in *Handy I* on January 3, 2001, allowing him to refile within a 6-month period, resulting in *Handy II* being timely commenced, relating back to September 5, 2000, and not being barred by either the statute of limitations or the statute of repose.

## Contentions of Dr. Reed

Dr. Reed argues, as he did before the trial court that (1) *Handy I* was not "commenced" on September 5, 2000, (2) Handy had actual knowledge of the extent and severity of his injuries prior to September 5, 1998, (3) Handy did not commence his action against Dr. Reed within 2 years of the time he admits his injuries were reasonably ascertainable or within 4 years of the occurrence of the act giving rise to his claims, (4) K.S.A. 60-241(a)(1) rather than K.S.A. 60-241(a)(2) applies to Handy's dismissal of *Handy I*, and (5) even if K.S.A. 60-241(a)(2) applies, the dismissal order was invalid because it affects Dr. Reed's rights despite the fact the court had never acquired jurisdiction over him at the time the order was issued and because the trial court did not have the power or statutory authorization to enter an order overriding and contrary to Kansas statutory law which has been legislatively established.

## Standards of review

The standard of review where summary judgment is granted is well known. The trial court (and appellate court on review) is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002). However, if the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact. *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000).

Ultimately, the issues in this case are controlled by various statutes and their interrelation. Resolving these questions are questions of law over which our appellate review is unlimited. See *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 472, 15 P.3d 338 (2000). Our rules of statutory construction, like the review of grants

of summary judgment, are well known and need not be restated here.

### Statutes of limitations and repose

Handy's allegations in his petition in regards to the rendering of services by a health care provider and with the statutes of limitation and repose in issue relate directly to the following statutory provision of K.S.A. 60-513 which states: "(a) The following actions shall be brought within two years: . . . (7) An action arising out of the rendering of or failure to render professional services by a health care provider, not arising on contract." Additionally, K.S.A. 60-513(c) is directly applicable in this case and states:

"(c) A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action."

### Statutes relating to commencement of actions, dismissal of actions, and saving of actions

The result in this complex case will turn on the wording and construction of the statutes relating to commencement, dismissal, and saving of *Handy I* and *Handy II*. We next set forth the applicable provision of these statutes.

K.S.A. 60-203 provides:

"(a) A civil action is commenced at the time of (1) filing a petition with the court, *if service of process is obtained* or the first publication is made for service of publication within 90 days after the petition is filed, except that the Court may extend that time an additional 30 days upon a showing of good cause by the plaintiff." (Emphasis added.)

Dr. Reed argues that because he had never been served at the time of the dismissal in *Handy I*, the provisions of K.S.A. 60-241(a)(1) relating to voluntary dismissal apply, and because the dismissal is to be entered "as a matter of course," the court does not have the

power to set terms and conditions upon which such dismissal can be achieved when the dismissal is in effect voluntary.

The facts of our case show the dismissal in *Handy I* was by order of the court. We set forth here and will ultimately reach our conclusion based on the language of K.S.A. 60-241(a)(2), which states:

"(2) *By order of court.* Except as provided in paragraph (1) of this subsection, an action shall not be dismissed at the plaintiff's instance save upon order of the judge and upon such terms and conditions as the judge deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice."

Finally, if the refiling of *Handy II* relates back to the filing of *Handy I*, it is only because of the authorization of the savings statute, K.S.A. 60-518:

"If any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff, or, if the plaintiff die, and the cause of action survive, his or her representatives may commence a new action within six (6) months after such failure."

## Analysis

We have previously set forth the contentions of both Handy and Dr. Reed. We will respond to those arguments, but we resolve this appeal by answering the following three questions:

1. On what date is *Handy II* deemed to have been commenced? ANSWER: July 3, 2001.

2. Was it legally proper for the trial court to judicially extend the statute of limitations beyond that which has been legislatively established? ANSWER: No.

3. Does a material fact remain to be determined that requires summary judgment in favor of Dr. Reed to be reversed? ANSWER: No. Even taking the latest date when Handy admits he reasonably ascertained his injury (November 20, 1998), the period of limitations within which to bring his cause of action against Dr. Reed has expired.

Although *Handy II* was filed on July 3, 2001, and service was obtained on Dr. Reed making this the commencement date of this action, Handy argues the actual commencement date of *Handy II* must be determined to relate back to September 5, 2000, the date *Handy I* was filed.

Critical to our analysis of this issue is the fact that Dr. Reed was never served with process in *Handy I*.

K.S.A. 60-203(a)(1) allows the time an action is commenced to be the date the petition is filed *"if service of process is obtained."* (Emphasis added.) In order for a subsequent action to relate back to the commencement of a prior action, K.S.A. 60-518 requires the prior action must be *"commenced within due time."* (Emphasis added.)

These statutory requirements have been the subject of several decisions by our Kansas courts. In *Dunn v. City of Emporia*, 7 Kan. App. 2d 445, Syl. ¶ 6, 643 P.2d 1137, *rev. denied* 231 Kan. 799 (1982), it was held:

"(a) A previous identical action against the city was not 'commenced within due time' under K.S.A. 60-518, where service was made upon the city attorney and not upon the mayor or clerk as required by K.S.A. 60-304(d); (b) such service on the city attorney was *void*, not merely voidable; and (c) the provisions of K.S.A. 60-518 being inapplicable to extend the statute of limitations, the action of the trial court in dismissing this cause was proper."

The identical rule was applied in *Newell v. Brollier*, 239 Kan. 587, 589, 722 P.2d 528 (1986), where it was said: "K.S.A. 60-518 is inapplicable herein as the original action was not 'commenced within due time.' " See *Elliott v. White, O'Conner & Werner, P.A.*, 750 F. Supp. 451 (D. Kan. 1990). For an excellent discussion of this precise question, see Smith, *Is Your Lawsuit Properly Commenced?*, 21 K.T.L.A.J. 19 (Sept. 1997).

We hold the mere filing of the petition and dismissal of the action without ever serving the defendant does not allow the case to be deemed to have been commenced under K.S.A. 60-203(a) to allow the provisions of K.S.A. 60-518 to operate to save Handy's subsequent action. Thus, we hold that *Handy II* was commenced on July 3, 2001, not September 5, 2000.

It is only if the trial court's order of January 3, 2001, in *Handy I* would be deemed to have been legally sufficient to invoke the savings provisions of K.S.A. 60-518 that *Handy II* could be deemed to have been commenced on September 5, 2000.

We recognize Dr. Reed's argument that because he had never been served in *Handy I* at the time of the dismissal that K.S.A. 60-241(a)(1) rather than (a)(2) applies and thus the dismissal would be automatic, preventing the trial court from having the power to set terms and conditions upon which such dismissal can be achieved. While such an argument may be correct, the dismissal in our case was not voluntary by the plaintiff and involved a court order. We reach the same result based on the application of either 60-241(a)(1) or (a)(2) and since a court order was involved here, we will consider whether the trial judge legally allowed the savings clause of K.S.A. 60-518 to be applied to a case that had never been legally "commenced" when the January 3, 2001, order in *Handy I* was entered.

It is fundamental to our system of government that the legislature makes our laws dealing with periods of limitations and the judiciary interprets and enforces such laws. In *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 674-77, 941 P.2d 1321 (1997), the authority of the legislature regarding adoption of periods of limitations was discussed and acknowledged. The *KPERS* opinion quotes from *Harding v. KC Wall Products, Inc.*, 250 Kan. 655, 831 P.2d 958 (1992), which in turn relied on *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 89 L. Ed. 1628, 65 S. Ct. 1137, *reh. denied* 325 U.S. 896 (1945), and teaches us that " '[t]he Court further stated statutes of limitations . . . are creatures of the legislature and not the judiciary, expressing public policy on the right to litigate. The shelter afforded by the running of the statute of limitations . . . is subject to a large degree of legislative control.' " *KPERS*, 262 Kan. at 676 (quoting *Harding*, 250 Kan. at 667).

As we have clearly set forth, the trial court never obtained jurisdiction over Dr. Reed in *Handy I*. Dr. Reed has been given by the Kansas Legislature the right to be free of claims which have not been timely commenced against him within the time set forth in K.S.A. 60-513. It was improper for the trial court to deny Dr. Reed

his statutory rights by a court order in a case in which he was not a party.

The cases as to the necessity of having "jurisdiction over the person" are legion and well summarized in Casad, *Jurisdiction and Forum Selection*, § 4.13, p. 44 (2d ed. 2002), by the following statement:

> "The right to be heard is fundamental to our conception of justice. Before the power of the state can be used to deprive a person of life, liberty, or property the person must have an opportunity for a day in court. And before the day in court, the person must receive some notice [*i.e.*, service of process]. . . ."

The trial court's order in *Handy I* dated January 3, 2001, does not comply with the requirements of K.S.A. 60-203 and K.S.A. 60-518 and does not validly extend the statute of limitations within which Handy had to file a claim against Dr. Reed.

We have considered but completely discounted that the ruling in *Peterson v. Garney Constr. Co.*, 2 Kan. App. 2d 587, 584 P.2d 1269 (1978), requires the trial court to be considered to have the authority to judicially extend the statute of limitations without statutory authority. *Peterson* differs greatly factually and does not justify granting a trial court authority that does not exist.

The trial court in this case correctly recognized that the power to extend the statute of limitations did not exist for both of the reasons above stated and correctly held that *Handy II* was not lawfully commenced until July 3, 2001, a time when both the statute of limitations and the statute of repose had run. The trial court correctly granted summary judgment to Dr. Reed in this case.

Had we decided that *Handy II* was deemed commenced on September 5, 2000, the language of K.S.A. 60-513(c) that if "the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitations shall not commence until the fact of injury becomes reasonably ascertainable to the injured party" would be material in this case.

Dr. Reed appears to have valid arguments that Handy should not only have actually known but also that the facts of his injury were reasonably ascertainable at the time of his appointments with Dr. Frevert on December 10, 1997, and July 23, 1998. However,

Handy argues the facts were not known or reasonably ascertainable to him until the first appointment after his September 4, 1998, surgery or November 20, 1998, when Dr. Frevert informed Handy he would never return to his former employment and have limited use of his left arm.

We need make only slight comment on the parties' disagreement over the application of *Jones v. Neuroscience Assocs., Inc.*, 250 Kan. 477, 827 P.2d 51 (1992), to the facts of our case. We agree with the trial court's conclusion that *Jones* is factually different because there the opinion of the experts (doctors) were in dispute. Here, it is clear the fact of the injuries were known and told to Handy and from the latest of those times, November 20, 1998, it was more than 2 years before this case was filed.

Therefore, the disputed facts, however resolved, do not present a genuine issue of material fact which precluded the granting of summary judgment. *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2002).

We agree that taking the latest possible date that Dr. Reed treated Handy as being January 31, 1997, more than 4 years passed between such date and the time *Handy II* was commenced on July 3, 2001. The 4-year statute of repose of K.S.A. 60-513(c) had clearly expired. The trial court correctly granted summary judgment based on the statute of repose.

Finally, the actions taken on Handy's behalf in this case were a deliberate attempt to extend the limitations period based on the wording of K.S.A. 60-241(a)(2) and the language of *Peterson*, 2 Kan. App. 2d 587. It was a reasonable attempt to set up a situation where Handy might enjoy an economic benefit if his claim against Dr. Reed could be established. An earlier timely filed action would only have benefitted the holder of the workers compensation lien and the counsel who might have successfully prosecuted such an action. We find no fault with the actions taken on Handy's behalf; that they were not successful represents nothing more than the risks of litigation.

Affirmed.