(251 P.3d 660)
No. 103,462

LINDA EDWARDS, JOSHUA EDWARDS, and SETH EDWARDS, COEL EDWARDS, and ADAM EDWARDS, MINORS, BY AND THROUGH THEIR NATURAL MOTHER, GUARDIAN, AND NEXT FRIEND, ROXANNE FRYOVER, *Appellants*, v. ANDERSON ENGINEERING, INC., MOORES MFG., INC., and WILSON & COMPANY, INC., ENGINEERS & ARCHITECTS, *Appellees*.

Opinion filed April 15, 2011.

*Fred Spigarelli* and *Thomas E. Hayes*, of Spigarelli, Spigarelli & Hayes, of Pittsburg, for appellant.

*Kurtis I. Loy* and *Kip C. Sagehorn*, of Loy Law Firm, LLC, of Pittsburg, for appellee Moores Manufacturing, Inc.

*John S. Conner* and *Heber O. Gonzalez*, of Polsinelli Shughart, PC, of Kansas City, Missouri, for appellee Wilson & Company, Inc., Engineers & Architects.

Before GREENE, C.J., PIERRON and ARNOLD-BURGER, JJ.

GREENE, C.J.: The family of William Edwards appeals the district court's summary judgment dismissing their wrongful death action against Moores Manufacturing, Inc. (Moores) and Wilson & Company, Inc. (Wilson), arguing that the district court erred in concluding that Wilson had no duty to Edwards and that no acts or omissions of either Moores or Wilson were the proximate cause of Edwards' death. Concluding that the district court was legally correct on the proximate causation issue, we affirm the dismissal of Edwards' suit.

## FACTUAL AND PROCEDURAL BACKGROUND

This is the second trip to our appellate courts for this litigation, the first trip having involved the appeal of a denial of summary judgment to a different defendant in the litigation; our Supreme Court affirmed there, concluding that material issues of fact precluded summary judgment. *Edwards v. Anderson Engineering, Inc.*, 284 Kan. 892, 893, 166 P.3d 1047 (2007) (*Edwards I*). The proceedings on remand occurred following the district court's judgment at issue in this appeal. Accordingly, we decline to consider or discuss those remand proceedings as a part of our opinion in this appeal. See *McCaffree Financial Corp. v. Nunnink*, 18 Kan. App. 2d 40, 56-57, 847 P.2d 1321 (1993) (evidence not before the trial court when summary judgment was rendered should not be considered on subsequent appeal).

The City of Pittsburg, Kansas, retained Wilson to design a storm sewer and drainage improvement project and "provide construc-

tion administration services and full-time construction observation services" for the Storm Sewer and Drainage Improvements; Homer/Ohio Deill/Stilwell Streets, also known as the Homer & Ohio Project (The Project). See *Edwards I*, 284 Kan. at 893.

Crossland Heavy Contractors, Inc. (Crossland), won the general contractor bid for the Project, and Crossland used large, elliptical-shaped concrete pipe manufactured by Moores to build the system. *Edwards I*, 284 Kan. at 893. Crossland completed the original installation of the elliptical concrete sewer pipe in September 2001.

On January 7, 2002, Wilson notified Crossland that the original elliptical concrete pipe needed replacement. Crossland replaced the pipe and put sections of the extracted failed pipe on a vacant lot adjacent to the project for testing. The pipe replacement was completed on March 29, 2002. The section of failed pipe that Mr. Edwards later attempted to cut was in the vacant lot for 2 weeks before the cuts were attempted.

Crossland retained Anderson Engineering, Inc. (Anderson), to test the failed pipe to determine whether it was defective. Neither Moores nor Wilson was aware that Crossland had hired an independent testing company to test the failed elliptical concrete pipe. On the day Mr. Edwards was killed, April 1, 2002, Crossland and a representative from Anderson were on site for the sole purpose of cutting sections of the failed elliptical concrete pipe for testing. Wilson representatives were not at the construction site on the day Mr. Edwards was killed and did not instruct or suggest to Crossland any method of cutting the failed elliptical concrete pipe. Wilson did not learn of Crossland's attempts to cut and test the failed elliptical concrete pipe until after Edwards was fatally injured.

Anderson needed the large pipes cut into sections to conduct its testing. The Anderson representative specified the location of the desired cut by marking on the pipe, and Crossland's job superintendent put a string line on the pipe and painted the area between the two marks.

Edwards, as an employee of Crossland, commenced cutting the pipe, but when the Anderson representative determined the process would take some time, he left the site. Edwards stood on top of the concrete pipe to effect a longitudinal cut with a saw. The

pipe split open, separated, and rolled outward, causing Edwards to fall and be crushed when the pipe rolled back in on him.

The district court granted summary judgment in favor of Wilson and Moores, concluding that neither had a duty to Edwards and that their acts and omissions were not the proximate cause of Edwards' death. The Edwards family timely appeals that summary judgment.

## STANDARDS OF REVIEW

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, a party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be reversed if reasonable minds could differ as to the conclusions drawn from the evidence. *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009).

Where there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009).

"The trial court (and appellate court on review) is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002). However, if the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact. *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000)." *Handy v. Reed*, 32 Kan. App. 2d 247, 251, 81 P.3d 450 (2003).

Summary judgment should be granted with caution in negligence actions. *Esquivel v. Watters*, 286 Kan. 292, 296, 183 P.3d

847 (2008). However, summary judgment is appropriate in a negligence action if the defendant shows there is no evidence indicating negligence. *Edwards I*, 284 Kan. at 904. Summary judgment is also proper in a negligence action if the only questions presented are questions of law. *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39, 169 P.3d 1052 (2007).

As the Edwards family correctly notes, generally proximate cause is a question of fact that is reserved for the trier of fact. *Hale v. Brown*, 287 Kan. 320, 324, 197 P.3d 438 (2008). Our Supreme Court, however, has recognized that "where the facts of a case are susceptible to only one conclusion, the question is one of law and may be properly subject to summary judgment. *Baker v. City of Garden City*, 240 Kan. 554, 557, 731 P.2d 278 (1987)." *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 306, 756 P.2d 416 (1988).

## DID THE DISTRICT COURT ERR IN CONCLUDING THAT THE ACTS AND OMISSIONS OF MOORES AND WILSON DID NOT PROXIMATELY CAUSE EDWARDS' DEATH?

Although the Edwards family has argued other errors on this appeal, we move initially to the question of proximate cause because our conclusion on this issue effectively moots all other issues appealed. The Edwards family argues that Edwards' death would not have occurred if the elliptical concrete pipe had not failed, and the entire sequence of transactions and events resulting in Edwards' death begins with the pipe failure. We must determine whether the Edwards family's claims fail as a matter of law because proximate causation has not been established given the uncontroverted facts cited by the parties.

The district court entered conclusions of law nearly identical as to both Moores and Wilson, and we quote from the Wilson order to outline the court's reasoning:

"1. Plaintiffs' claim of negligence against Wilson is dismissed with prejudice as a matter of law.

"2. As a matter of law Wilson's alleged negligence in design or observation for the project could not have been the proximate cause of Mr. Edwards' injuries.

"3. Wilson's alleged failure to properly design or observe the concrete pipe is too attenuated to be a usual, likely, or legally cognizable cause of Mr. Edwards' injuries.

"4. It is unreasonable, and too remote as a matter of law, to place a burden on Wilson to foresee the inappropriate cutting of concrete pipe.

"5. Mr. Edwards' accident was not reasonably foreseeable by the exercise of reasonable care and prudence and Wilson could not foresee this kind of an accident happening because of the allegedly defective pipe and as a matter of law is too remote for Wilson to have foreseen cutting this pipe in an inappropriate way."

In Kansas, an injured party's right to recover is limited to when the injury is a direct and proximate result of a defendant's negligence. *Deal v. Bowman*, 286 Kan. 853, 859, 188 P.3d 941 (2008) (quoting *Hickert v. Wright*, 182 Kan. 100, 107-08, 319 P.2d 152 [1957]). Our Supreme Court recently defined proximate cause and noted the plaintiff's burden of proof:

"Proximate cause is cause 'which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred, the injury being the natural and probable consequences of the wrongful act.' *Yount v. Deibert*, 282 Kan. 619, 624-25, 147 P.3d 1065 (2006). To satisfy the plaintiff's burden of proof on the causation element, the plaintiff must produce evidence that ' "affords a reasonable basis for the conclusion that it is *more likely than not* that the conduct of the defendant was a cause in fact of the result." ' 282 Kan. at 628, (quoting Prosser & Keeton on Torts § 41, pp. 269-70 [5th ed. 1984])." *Rhoten v. Dickson*, 290 Kan. 92, 114-15, 223 P.3d 786 (2010).

Our Supreme Court has noted: "[I]n considering proximate cause we retain the principle that an intervening cause component breaks the connection between the initial negligent act and the harm caused." *Hale*, 287 Kan. at 324. When determining whether an intervening negligent act relieves the original wrongdoer of liability, our Supreme Court has stated:

"Whether the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the intervening negligent act of another is determined by the test of foreseeability. If the original actor should have reasonably foreseen and anticipated the intervening act causing injury in the light of the attendant circumstances, his act of negligence would be a proximate cause of the injury. Foreseeability of some injury from an act or omission is a prerequisite to its being a proximate cause of the injury for which recovery is sought. When negligence appears merely to have brought about a condition of affairs or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct and proximate cause and the former only the indirect or remote cause." *George v. Breising*, 206 Kan. 221, 227, 477

P.2d 983 (1970); see *Hoxie Implement Company, Inc. v. Hoss*, No. 98,165, unpublished opinion filed August 22, 2008, *rev. denied* February 12, 2009.

The district court based its judgments on fact findings taken from the uncontroverted facts, and these are not in dispute on appeal. Consolidating those findings from each of the district court's memoranda of judgment, and adding certain factual aspects conceded on appeal, we summarize those facts most material to our analysis:

1. At the time of his death, Edwards was an employee of Crossland, the general contractor on the project for the City.
2. When the original elliptical concrete pipe failed, it was replaced by Moores and Crossland, and the failed pipe was moved to a vacant lot away from the job site, where it remained for 2 weeks prior to testing.
3. Crossland elected to cut and test the failed concrete pipe to determine whether the pipe was defective in anticipation of a possible claim against Moores. No one discussed this testing with Moores, and Wilson was not aware that Crossland hired an independent testing company to perform the test.
4. Neither Moores nor Wilson monitored or observed the cutting of the failed elliptical concrete pipe, and Wilson did not instruct or suggest to Crossland any method of cutting the pipe for testing.
5. The testing was designed and supervised by Anderson, and according to the Edwards family "was negligently conducted when [the engineer on site] instructed Crossland to cut the pipe longitudinally resulting in the death of Mr. Edwards."
6. Crossland allowed Edwards to stand and work on top of the elliptical concrete pipe that was not braced, cribbed, or strapped to prevent the pipe from unexpected movement. Crossland was cited by OSHA and fined for failure to maintain an adequate accident prevention program and for failure to address the hazards associated with nonroutine tasks.
7. Edwards was fatally injured when he attempted a longitudinal cut of the pipe, which split the pipe, causing Edwards to fall into the pipe, and the pipe then rolled back, crushing him.

8. Edwards' activities for Crossland in connection with his cutting of the pipe for testing after it was removed from the project were not in any way related to the original project.

The Edwards family claims that if Moores had not manufactured defective pipe and if Wilson had not been negligent in the design of the bedding for the pipe, the pipe would not have failed, would not have been removed and replaced, would not have been tested, and would not have been cut by Edwards for the testing. Thus, they argue that there was a continuous sequence of events that produced Edwards' death. On appeal, they articulate their argument, "[b]ut for the choice to use green pipe, knowing it was failing and inappropriate, there would be no reason to remove and test the pipe at a later date."

We agree with the district court's holding that the acts or omissions of these defendants were entirely "too attenuated" to be a usual, likely, or legally cognizable cause of Edwards' fatal injuries. We view these facts as establishing intervening negligent acts of others, which broke the connection between the initial negligent acts and the harm caused. Here, there were several such "intervening acts," including independent testing after an agreed replacement by Moores, cutting the pipe for such testing in a manner that violated OSHA standards, and cutting the pipe longitudinally as directed by Anderson, resulting in catastrophic if not unanticipated failure and the uncontrollable rolling and crushing movement that led to Edwards' death. These intervening acts or consequences cannot be said to be foreseeable by either Moores or Wilson. See *Hale*, 287 Kan. at 323-24.

In articulating their argument in a "but for" manner, the Edwards family has demonstrated the weakness in its "sequence of events" analysis. In retrospect it can often be said that, but for a certain fact, an injury would not have occurred; but the injury must be an ordinary and natural consequence of the negligence. *Aguirre v. Adams*, 15 Kan. App. 2d 470, 474, 809 P.2d 8 (1991). As Justice Cardozo has said, "[p]roof of negligence in the air, so to speak, will not do." *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 341, 162 N.E. 99 (1928). And "natural and probable consequences" are

those which human foresight can anticipate because they happen so frequently they may be expected to recur. *Norton Farms, Inc. v. Anadarko Petroleum Corp.*, 32 Kan. App. 2d 899, 904-05, 91 P.3d 1239 (2004).

We simply do not view the intervening events here to be "natural and probable" in this manner; as we noted in oral argument, if we were to accept the Edwards family's argument, virtually any accident happening after the removal of the defective pipe would be attributable to Moores and Wilson—even a fatal collision involving the truck hauling the pipe to a disposal site. This overbroad conception of proximate cause is not consistent with Kansas jurisprudence. See, *e.g.*, *Hale*, 287 Kan. 320; *Woodruff v. City of Ottawa*, 263 Kan. 557, 951 P.2d 953 (1997); *Wozniak v. Lipoff*, 242 Kan. 583, 750 P.2d 971 (1988); *Shideler v. Habiger*, 172 Kan. 718, 243 P.2d 211 (1952); *Reece Const. Co. v. State Highway Comm'n*, 6 Kan. App. 2d 188, 627 P.2d 361 (1981).

The material facts were not in dispute and were susceptible to only one conclusion: intervening events broke any causal connection between the alleged negligence of these defendants and the death of Edwards. For this reason, summary judgment dismissing both Moores and Wilson was proper and will not be disturbed on appeal. See *Baker v. City of Garden City*, 240 Kan. 554, 557, 731 P.2d 278 (1987).

Affirmed.