(91 P.3d 1246)
No. 91,191

BRENT LEGLEITER, *Appellant,* v. KENNETH GOTTSCHALK d/b/a
BRASS RAIL TAVERN, *Appellee.*

Opinion filed June 25, 2004.

*Thomas C. Boone,* of Law Office of Thomas C. Boone, for the appellant.

*Mickey W. Mosier* and *Nichole Mohning Roths,* of Clark, Mize & Linville, Chartered, of Salina, for the appellee.

Before RULON, C.J., PIERRON and HILL, JJ.

PIERRON, J.: Brent Legleiter appeals the district court's granting of summary judgment to Kenneth Gottschalk d/b/a Brass Rail Tavern (tavern), after he was injured in a fight with a third party outside of the tavern. The district court found Legleiter was injured on public property, not possessed or controlled by Gottschalk or his employees, and therefore, as a matter of law, no liability existed on Gottschalk's part to control the actions of third parties. We affirm.

On the evening of October 2, 2001, Brian Gribben was the manager and bartender of the tavern and was the only employee working on a slow Monday night. No problems had occurred that evening until Gribben made the last call a little before 2 a.m. Larry Hamby was playing pool, and he attempted to start another game after Gribben made the last call. Gribben approached Hamby and told him the tavern was closing and he could not play another game. As Gribben walked away, Hamby started a new game. Gribben ended Hamby's game, and an argument ensued. Gribben refunded Hamby's quarter and told him to leave the tavern. After the two exchanged more words, Gribben physically removed Hamby from the tavern.

As Gribben took Hamby outside, the tavern emptied to watch the events. Hamby was at the bar with his friends, Legleiter, Darcy Good, Kevin Weaver, and his brother, Randy Lynn. Dustin Karst was at the bar with Shanun and Brandon Niehoff. There were approximately 15 people in the bar at closing time. Outside the tavern, Hamby continued to fight and struggle with Gribben until Gribben took him to the ground and held him there. Gribben told Hamby he would let him go if he calmed down.

As Gribben and Hamby struggled, Lynn retrieved a baseball bat from his car parked across the street from the tavern. Shanun Niehoff stated that he was helping Gribben with a customer who refused to leave the establishment. Lynn ran back toward the fracas and struck Shanun in the leg from behind. Brandon and at least one other person pinned Lynn down on the ground and wrestled the bat away from him. Lynn then ran down the street chased by several men. Karst claimed he helped Neihoff pin Lynn down and that during the incident Legleiter punched him on the top of the head.

Karst approached Legleiter and struck him at least two times. Legleiter was knocked out and became unresponsive. Karst's attack on Legleiter took place entirely upon public property consisting of the sidewalk and street in front of the tavern. The altercation between Karst and Legleiter lasted between 2 and 5 minutes. Karst was pulled off Legleiter by Good and Mark Schoenberger. Schoenberger said Karst punched Legleiter at least 10 times before Legleiter went down and then punched and kicked him until he was unresponsive.

Gribben stated that he did not call for help from anyone else in ejecting Hamby from the tavern. He did not direct anyone to fight with Lynn or Legleiter. Gribben stated that he did not see Karst hit Legleiter because he had already gone back inside the bar. When Gribben talked with Gottschalk the next day about the incident, Gribben said that he never saw Karst fighting with Legleiter. However, Good testified that Gribben was standing 4 or 5 feet from the fight between Karst and Legleiter and that Gribben did not do anything about it. Good said Gribben never called Karst off

of Legleiter and that Gribben went back into the bar after the fight was over.

A couple of minutes after Gribben went back into the bar, Good went inside and asked for some towels because Legleiter was bleeding. Gribben gave her some towels. Good asked if there was a phone she could use, and Gribben told her the bar phone did not dial out but there was a pay phone. Gribben did not call the police or call for an ambulance. Good said she called 911 using the pay phone.

Legleiter was severely injured as a result of this event and was hospitalized for an extended period of time. Karst was apparently prosecuted for his actions. Legleiter sued Gottschalk for personal injuries and substantial damages under a theory of respondeat superior and the duty of the owner or his employees to use reasonable and ordinary care regarding patrons of the tavern. The district court found Legleiter was injured on public property, not possessed or controlled by Gottschalk or Gribben, and therefore, as a matter of law, no liability existed on Gottschalk's part to control the actions of third parties, namely Karst.

Legleiter argues Gottschalk owed him a duty to protect him from the criminal acts of a third party and the district court erred in granting summary judgment to Gottschalk. Legleiter contends the district court erred in focusing solely on the public situs of where his injuries occurred when determining the lack of a duty. Legleiter also argues that whether the attack was foreseeable is a question of fact for the jury and that genuine issues of material fact existed as to whether Gribben's actions caused or contributed to the fight that caused his injuries.

The standard of review is familiar. Summary judgment may be granted

"when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to

the conclusive issues in the case. On appeal, we apply the same rule and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

Summary judgment should be granted with caution in negligence actions. *Fettke v. City of Wichita*, 264 Kan. 629, 632, 957 P.2d 409 (1998). Nevertheless, a defendant is entitled to summary judgment in a negligence case if the defendant shows the claim is supported by no evidence indicating negligence. *Crooks v. Greene*, 12 Kan. App. 2d 62, 64-65, 736 P.2d 78 (1987). For an action of recoverable negligence, the plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. Whether a duty exists is a question of law. Whether the duty has been breached is a question of fact. See *Reynolds v. Kansas Dept. of Transportation*, 273 Kan. 261, Syl. ¶ 1, 43 P.3d 799 (2002).

The general common-law theory of premises liability for commercial enterprises is expressed in the Restatement (Second) of Torts § 344 (1963). Kansas adopted § 344 in *Gould v. Taco Bell*, 239 Kan. 564, 568, 722 P.2d 511 (1986):

" 'A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

" '(a) discover that such acts are being done or are likely to be done, or

" '(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it.' "

However, a business' duty does not extend to every person who enters the property of the business. "The duty of care owed by a premises owner to an entrant upon the land is dependent upon the status of the person entering the premises." *Gould*, 239 Kan. at 567.

As observed in Restatement (Second) of Torts § 344, comment a, the duty to protect others from the harmful acts of third persons is only owed to "business visitors," commonly known as invitees. " 'An invitee is one who enters or remains on the premises of an-

other at the express or implied invitation of the possessor of the premises for the benefit of the inviter, or for the mutual benefit and advantage of both the inviter and invitee.' " *Mozier v. Parsons*, 256 Kan. 769, 771, 887 P.2d 692 (1995) (quoting *Gerchberg v. Loney*, 223 Kan. 446, 448-49, 576 P.2d 593 [1978]).

As a general rule, an owner of a business does not insure the safety of his patrons or customers. This means the owner of a business ordinarily does not have a duty to provide security to protect against the criminal acts of third parties in a parking lot. However, an exception exists when circumstances indicate that a business owner's customers have a risk of peril beyond the ordinary. *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 548, 856 P.2d 1332 (1993).

We note in the instant case the incident took place on a public sidewalk and not in the business' parking lot.

In *Kimple v. Foster*, 205 Kan. 415, 469 P.2d 281 (1970), the plaintiff, who was a guest at the defendant's bar, was attacked by a group of other patrons. The court found that the defendant had reason to know that his guests were in danger because the group had been unruly for several hours before the attack. Having been put on notice of the possible danger to other patrons, the defendant had an affirmative duty to protect them. 205 Kan. at 418-19. Similarly in *Gould*, 239 Kan. 564, 569, the restaurant clerks knew the plaintiff's assailants had started a fight on a previous occasion at the restaurant and thus had a duty to protect the plaintiff from the attack that started in the restaurant and then continued in the parking lot.

In *Seibert*, the plaintiff was attacked in the parking garage, apparently owned by the defendant, by an unknown assailant. The district court granted the defendant's motion for summary judgment because there were no prior similar incidents indicating such a criminal act was foreseeable. The Kansas Supreme Court reversed, holding that the district court should determine foreseeability based on the totality of the circumstances rather than just the history of prior crimes in the area, although history was a factor. The district court was also instructed to review the level of crime

in the area, the lighting in the garage, and other relevant factors. 253 Kan. at 550.

The parties agree that Kansas has not addressed the issue of liability of a business owner to a business invitee once the invitee leaves the business premises and is subjected to harmful conduct of a third party. Gottschalk argues *Gragg v. Wichita State Univ.*, 261 Kan. 1037, 934 P.2d 121 (1997), demonstrates that a defendant must have possession or control over the situs of the injury in order to create a duty to protect patrons from activities of third parties. The *Gragg* court found the corporate sponsors of the fireworks show were not the owners, occupiers, or possessors of the university campus where the injuries occurred, that their contributions were monetary or in kind, and that they had no control over security on the campus.

There are cases outside of Kansas addressing the issue in this case. Gottschalk cites *Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d 429 (7th Cir. 1978). In *Mitchell*, the plaintiff attempted to deliver a truckload of merchandise to the defendant's receiving dock. Because another truck was at the dock, the defendant's employees instructed the plaintiff to wait with his truck on the street outside the defendant's loading area. While waiting, the plaintiff was shot and seriously wounded by an unknown assailant. The defendant's employees were aware that there had been repeated criminal acts on and about the premises, and the complaint alleged that they knew or should have known of the high risk of criminal attack upon any driver waiting in a truck parked in that area.

The *Mitchell* court affirmed the district court's dismissal of the complaint, on the ground that the defendant could not be liable for the criminal act of a third party that occurred off the defendant's premises and in the public street. The court stated:

"A possessor of land is subject to liability to business invitees 'while they are upon the land.' In the present case, the Mitchells were parked upon a public thoroughfare. . . .

"[T]he Illinois courts, we believe, would rule that Comment c to § 314A controls. We do not regard the defendant-appellee's concession that Lawrence Mitchell was an invitee on the date and time of his injury as an irrevocable waiver of its defense that Mitchell ceased to be an invitee at the moment when he left the receiving dock area and returned to the street. Under the direct wording of Com-

ment c, it is clear that A & K had no duty to the Mitchells. The district court's dismissal of the complaint because of the want of any existing duty comports with that analysis." (Footnote omitted.) 573 F.2d at 437-38.

Legleiter argues there is no causal connection in *Mitchell* between the attacks upon the plaintiff and the owner/invitee relationship of the parties. Legleiter is incorrect. The truck driver in *Mitchell* was instructed by employees of the plaintiff to wait in the street, thus providing sufficient causal connection. Despite the connection and the high crime area, the *Mitchell* court still found no duty.

We have found persuasive cases from other jurisdictions. In *Badillo v. DeVivo*, 161 Ill. App. 3d 596, 515 N.E.2d 681 (1987), Badillo was verbally accosted and physically attacked by another patron in the bar. The bar owner intervened, stopped the altercation, and then ejected both individuals from the bar. Badillo then proceeded to her automobile parked one-half block away from the bar, where she again was assaulted and battered by the other patron. The trial court dismissed her negligence claims against the bar.

The *Badillo* court recognized a tavern operator's duty to protect its patrons from foreseeable dangers caused by third parties but distinguished those cases as involving injurious acts occurring on the business premises or its parking lot. The court stated: "While there is some authority that an owner or operator of a business has a duty to provide a reasonably safe means of ingress and egress . . . we do not find that limited authority analogous here, where, as noted above, the injury occurred one-half block away from defendant's property." 161 Ill. App. 3d at 598.

The *Badillo* court also addressed an argument similar to that being raised by Legleiter, namely that Gribben's actions in forcefully ejecting Hamby from the tavern were the figurative spark that ignited the fire causing his injuries. The *Badillo* court stated:

"But even assuming the subsequent assault was foreseeable, foreseeability is not the only element necessary to establish duty. In determining whether a duty exists, the court should also consider '[t]he likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant.' [Citation omitted.] This court has repeatedly held that requiring a business owner to protect its patrons from injuries that occur after the

patron leaves the premises places an unjustifiable burden on the operator and on the police force. [Citation omitted.] It would oblige tavernkeepers, as well as other business operators to, in essence, police the streets so as to ensure their patrons' safe passage to their cars or even their homes. Plaintiff's proposed remedy would be particularly burdensome as it would require establishment owners to determine which party was the aggressor in an altercation and to detain that potentially dangerous person on the premises until the victim could flee." 161 Ill. App. 3d at 599.

In *Locklear v. Stinson*, 161 Mich. App. 713, 411 N.W.2d 834 (1987), the plaintiff's decedent was involved in an altercation in and around the defendant bar. The plaintiff filed a complaint alleging that although the defendant bar ejected Stinson, the decedent's assailant, from the bar, its employees allowed Stinson to remain in the parking lot. When the decedent left the bar, the altercation continued. Ultimately, the decedent fled in his vehicle with Stinson pursuing him in his own vehicle. After a collision with a third party, the confrontation continued and the decedent stabbed Stinson. The decedent fled in his vehicle and became involved in a fatal crash. The *Locklear* court reversed the trial court's denial of the defendant bar's motion for summary disposition stating in part:

"[T]he decedent was injured away from the premises. Plaintiffs would have us extend defendants' duty as a business invitor by alleging that a breach of duty on the premises was the cause of the decedent's death away from the premises.

"We decline to do so; when the decedent left the premises and was no longer on the property owned or controlled by the defendants, the duty ended. [Citation omitted.]" 161 Mich. App. at 717-18.

See also *Fishman v. Beach*, 214 A.D.2d 920, 625 N.Y.S.2d 730 (1995) ("[T]he physical altercation which ultimately resulted in plaintiff's injuries indisputably occurred no less than 60 to 100 feet from the premises in a city street. We therefore find that [bar owner] cannot be held to a duty 'to control the conduct of patrons in consuming alcoholic beverages . . . beyond the area where supervision and control may reasonably be exercised.' ").

This is not a case where prior unruliness or historic criminal activity occurred at the business. It was undisputed that the Brass Rail was not known as an establishment where fights were prone to break out. It is also undisputed that no outrageous behavior

occurred at the tavern on the night in question until Hamby started problems at closing.

This is also not a situation where Gribben was creating a known, obvious, and imminently dangerous situation or was subjecting any bar patrons, except Hamby who he was forcefully ejecting from the bar, to such a situation. This is also not a situation where the fight injuring Legleiter broke out on the business premises and then moved to the public street or thoroughfare.

The district court correctly espoused Legleiter's theory of liability that

"Gribben started the chain of events which led to plaintiff's injuries when he ejected Hamby from the bar, and thus had a duty to all who had been Brass Rail patrons to control the subsequent course of events, and to control all of the persons who exited the tavern into the public sidewalk and street."

As was said by the district court:

"Plaintiff and Karst left the tavern in a voluntary fashion, thus ending their status as invitees. Once they, Gribben, Hamby and the others were no longer on Brass Rail property, any legal right of control Gribben may have had over them and subsequent events ceased. In short, defendant, acting through Gribben, had no further duty to his former patrons.

"While one could perhaps conceive of facts under which an owner or operator of a tavern would have a duty not to cause or allow a patron to leave the tavern premises and thus enter into an area or situation of know danger, that is speculation at best, and has nothing to do with the factual situation presented here."

We agree with the district court that as a general rule, business owners are not responsible to protect their customers from the acts of third parties outside the premises of the business.

Implicit in the district court's decision is the rule that an owner of a business does not insure the safety of his or her patrons or customers. We do not find any exception to this rule when the actions of the third parties occur off the business premises and when there are no circumstances to indicate to the business owner that a risk of peril to the customers is beyond the ordinary. *Seibert*, 253 Kan. at 548.

We hold the district court did not err in granting summary judgment to Gottschalk. The facts fail to show the breach of any duty

owed by Gottschalk and Gribben to Legleiter, and summary judgment was proper.

Affirmed.