No. 96,203

LINDA EDWARDS, *et al.*, *Appellees*, v. ANDERSON ENGINEERING, INC., *Appellant*.
(166 P.3d 1047)

Opinion filed September 7, 2007.

*James D. Oliver*, of Foulston Siefkin LLP, of Overland Park, argued the cause, and *Wyatt A. Hoch*, of the same firm, was with him on the brief for appellant.

*Thomas E. Hayes*, of The Spigarelli Law Firm, of Pittsburg, argued the cause, and *Fred Spigarelli* and *Lori Bolton Fleming*, of the same firm, were with him on the brief for appellees.

The opinion of the court was delivered by

JOHNSON, J.: Anderson Engineering, Inc. (Anderson) files this interlocutory appeal, challenging the denial of its summary judgment motion in a wrongful death action filed by the wife and children of William Edwards, who died in a construction accident. Anderson claims immunity as a construction design professional under K.S.A. 2006 Supp. 44-501(f). Finding that the district court mischaracterized legal questions as disputed issues of fact, but that the district court's denial of the summary judgment motion, as presented, was correct, we affirm.

Originally, the City of Pittsburg hired Wilson & Company, Inc. to design a storm sewer and drainage improvement project. Crossland Heavy Contractors, Inc. (Crossland) won the construction bid and used large, elliptical-shaped concrete pipe manufactured by Moores Manufacturing, Inc. (Moores) to build the system. Crossland completed the project in September 2001.

In January 2002, Wilson notified Crossland that it would need to replace some of the concrete pipes that had failed. Crossland replaced the pipe and put the extracted failed pipe on a vacant lot that had been prepared as a materials storage and staging area for

the original construction project. The replacement project was completed on March 29, 2002.

Crossland retained Anderson to test the failed pipe to determine whether it complied with the project specifications for wire reinforcement and strength. The parties did not memorialize their agreement in writing.

Anderson needed the large pipes cut into sections to conduct its testing, and Crossland committed to cut the pipe. Upon being notified the pipe cutting would occur on April 1, 2002, an Anderson engineer went to the storage site and conversed with Crossland's project superintendent. Crossland proposed to crush the pipe with heavy equipment, but the Anderson engineer wanted the pipe cut in order to have clean edges for testing. The engineer specified the location of the desired cut lines by marking on the pipe with a yellow marker, which included a line that extended lengthwise on the top of the pipe.

Crossland commenced cutting the pipe, but when the Anderson engineer determined the process would take some time, he left the site. Edwards, a Crossland employee, stood on top of the concrete pipe to effect a lengthwise cut. At some point, shortly after the Anderson engineer had left, the pipe split lengthwise and rolled outward, causing Edwards to fall and be crushed when the pipe rolled back.

The Edwards family initially filed suit against Anderson and Moores, the pipe manufacturer. As an employee of Crossland, Edwards was covered by Crossland's workers compensation policy, and benefits were paid to his survivors. The district court granted a motion by Crossland and Zurich North America to intervene in the wrongful death action. The district court granted a motion to amend the petition to join Wilson, the original project engineer, as a party defendant. Subsequently, the district court granted summary judgment in favor of Wilson and Moores, and both of those defendants were dismissed with prejudice.

However, on Anderson's summary judgment motion, the district court found that "material issues of fact exists [*sic*] as to whether K.S.A. 44-501(f) is applicable and therefore Summary Judgment is improper." The court went on to specify that:

"A jury must determine if: 1) Defendant Anderson is a construction design professional; 2) the testing of the failed concrete pipe was on a construction project; and 3) that Defendant Anderson's activity in testing and drawing on the pipe constitutes negligent preparation of design plans or specifications."

Anderson requested that the district court certify the summary judgment denial for an interlocutory appeal, arguing that the applicability of the immunity statute is a question of law for the judge to decide, rather than a jury question. In its memorandum decision granting Anderson permission to seek an interlocutory appeal, the district court stated:

"The court finds that whether applicability of the immunity statute is a question of fact for the jury or a question of law to be determined by the court is in itself a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

The Court of Appeals granted Anderson leave to file the interlocutory appeal. The case was transferred to this court pursuant to the authority of K.S.A. 20-3018(c).

*SUPREME COURT RULES OF APPELLATE PRACTICE*

We pause to comment on two of our rules of appellate practice. We do so not to chastise or embarrass competent counsel in this appeal, but rather to remind the practicing bar of these frequently violated rules.

The appellees' brief is accompanied by a voluminous appendix, albeit not all of the appended documents are contained in the record on appeal. Appendices can be most helpful to appellate jurists and members of their staff. However, an appendix is limited to containing extracts from the record on appeal and cannot serve as a substitute for the record itself. Supreme Court Rule 6.02(f) (2006 Kan. Ct. R. Annot. 36); Supreme Court Rule 6.03(e) (2006 Kan. Ct. R. Annot. 39). The court will not consider appended items which are not found in the record.

Anderson submitted a reply brief in which it challenged appellees' arguments on the points raised in appellant's initial brief. The reply brief's introduction does not refer to new material raised in

appellees' brief, but rather states that the reply would "reconfirm" Anderson's legal arguments.

Supreme Court Rule 6.05 (2006 Kan. Ct. R. Annot. 41) states, in relevant part:

"A reply brief shall not be submitted unless made necessary by new material contained in the appellee's or cross-appellee's brief. A reply brief shall make specific reference to the new material being rebutted and under no circumstances shall it duplicate or include, except by reference, any statements, arguments, or authorities already made in preceding briefs."

Quite plainly, a reply brief is intended to provide the appellant an opportunity to address new issues or material raised for the first time in the appellee's brief. It is not intended to be a vehicle to reiterate arguments from the initial brief. An opportunity to get in the last word is afforded to appellants on oral arguments.

## STATUTORY IMMUNITY

Under the Workers Compensation Act (Act), K.S.A. 44-501 *et seq.*, an employer who is subject to the Act is liable to pay compensation to an employee who suffers personal injury by accident arising out of and in the course of employment. K.S.A. 2006 Supp. 44-501(a). In return, the employee receiving workers compensation benefits cannot maintain a civil action for damages against the employer or another employee. K.S.A. 2006 Supp. 44-501(b). In other words, employers and coworkers are immune from civil liability for damages because the remedy provided by the Act is exclusive. *Scott v. Hughes*, 281 Kan. 642, 645, 132 P.3d 889 (2006).

Nevertheless, if the employee's injury or death was caused by a third party with legal liability, the injured worker or his or her successors in interest shall have the right to collect workers compensation benefits and also pursue civil damages against the third party. K.S.A. 44-504(a). The employer is permitted to intervene in the third-party action and, if the employee recovers from the third party, the employer can recoup the workers compensation benefits previously paid. The legislature's intent in enacting 44-504 was two-fold: "(1) to preserve an injured worker's claim against third-party tortfeasors and (2) to prevent double recoveries by insured workers. *Loucks v. Gallagher Woodsmall, Inc.*, 272 Kan. 710, Syl.

¶ 2, 35 P.3d 782 (2001)." *PMA Group v. Trotter*, 281 Kan. 1344, 1348-49, 135 P.3d 1244 (2006).

In this case, Anderson was not Edwards' immediate employer or statutory employer. See K.S.A. 2006 Supp. 44-508(a) (extending application of Act to certain individuals or entities who are not immediate employers of injured worker). Thus, Anderson would be amenable to a third-party action if it was legally liable for Edwards' injuries. Anderson claims it cannot be legally liable for Edwards' injuries because the Act specifically grants it immunity under K.S.A. 2006 Supp. 44-501(f), which provides:

"Except as provided in the workers compensation act, no construction design professional who is retained to perform professional services on a construction project or any employee of a construction design professional who is assisting or representing the construction design professional in the performance of professional services on the site of the construction project, shall be liable for any injury resulting from the employer's failure to comply with safety standards on the construction project for which compensation is recoverable under the workers compensation act, unless responsibility for safety practices is specifically assumed by contract. The immunity provided by this subsection to any construction design professional shall not apply to the negligent preparation of design plans or specifications."

Anderson points out that the construction design professional immunity provision was added to the workers compensation law in 1985. It claims that the provision was the legislature's response to two Kansas Supreme Court cases, *Hanna v. Huer, Johns, Neel, Rivers & Webb*, 233 Kan. 206, 662 P.2d 243 (1983), and *Balagna v. Shawnee County*, 233 Kan. 1068, 668 P.2d 157 (1983).

In *Hanna*, two steel workers were injured when a joist on an upper level fell. Other workers on the project had raised the wrong size joist into the particular location and had compounded the problem by failing to secure the joist to the steel beam. Testimony was offered to show that the workers' immediate employer was obviously and notoriously guilty of unsafe practices. Plaintiffs claimed the architect on the project breached its duties under the construction contract or, in the alternative, was guilty of negligence which was the proximate cause of the accident. The plaintiffs obtained judgments, and the architect appealed.

The *Hanna* court found:

"An architect, or other design professional, who contracts with an owner of property for the preparation of plans and specifications for the erection of a building and who agrees to be responsible for the general administration of the construction contract between the owner and the general contractor is not contractually responsible for the safety of the workmen on the jobsite unless such duty is specifically assumed in the contract." 233 Kan. 206, Syl. ¶ 1.

Further, the court noted that "[g]enerally, the duty of an architect to supervise or administer the construction work merely entails a duty to see that the building when constructed meets the plans and specifications for which the owner agreed to pay." 233 Kan. 206, Syl. ¶ 2. Accordingly, *Hanna* found that the architect in that case owed no duty to the plaintiffs on either a contract or a negligence theory. The judgments were reversed and the case remanded with directions to enter judgment for the defendant. 233 Kan. at 222.

However, in reaching its decision, the *Hanna* court opined that "if [the architect] had actual knowledge of unsafe practices [the architect] should have taken some action," even though the court noted that, in the case being appealed, all of the evidence had indicated that the architect had not been advised of any such unsafe practices. 233 Kan. at 221. Although it was unnecessary to the decision in the case, the *Hanna* court declared that "[a]s a professional, an architect cannot stand idly by with actual knowledge of unsafe practices on the jobsite and take no steps to advise or warn the owner or contractor." 233 Kan. at 222.

Approximately 4 months later, the Supreme Court relied heavily upon its *Hanna* opinion in deciding whether an architect/engineer could be held liable for the death of a worker crushed in the cave-in of an unshored trench. The district court had granted the engineer summary judgment. The *Balagna* court agreed that the engineer's contractual duty to provide an inspector to review construction operations did not mean that the engineer had assumed control of the contractor's methods or procedures in completing the job, thus precluding the engineer's legal responsibility for the trenching accident.

However, the *Balagna* court found that the engineer in that case had actual knowledge of the applicable safety standards which required shoring in trenching operations and had actual knowledge

that the prescribed safety precautions were not being followed by the contractor at the time of the accident. 233 Kan. at 1076. Therefore, apparently based upon the dictum in *Hanna*, the *Balagna* court opined that such knowledge created a duty on the part of the engineer to take some reasonable action to prevent injury to the contractor's employee. Accordingly, the *Balagna* court found error in the granting of summary judgment to the engineer because "[w]hether or not the [engineer] acted reasonably under all the circumstances was a factual issue which should have been submitted to the jury." 233 Kan. at 1076.

The effect of the 1985 workers compensation amendments in K.S.A. 44-501(f) was to eliminate the duty to an injured employee covered by workers compensation, which the holdings in *Hanna* and *Balagna* had placed upon a construction design professional who had acquired actual knowledge of the violation of prescribed safety standards. One article described the impact of the legislation as follows:

> "Two years later the legislature overruled *Balagna* with an amendment to the workers' compensation statute. K.S.A. 44-501(f), immunizes design professionals from construction site accident claims if workers compensation insurance is in force, unless (1) responsibility for safety practices is specifically assumed by contract, or (2) the injury arises from the negligent preparation of drawings and specifications. The statute effectively ended the design professional's role as an unwitting site safety policeman." H. A. Houk, *Design Professional Liability in Kansas*, in KBA Kansas Construction Law Handbook § 9.2.3.1, p. 9-15 (2d ed. 2006).

Parsing the statutory language, we find that immunity is applicable where:

1. The person or entity claiming immunity is a construction design professional or an employee of a construction design professional;
2. The construction design professional had been retained to perform professional services on a construction project;
3. The worker's injury resulted from his or her employer's failure to comply with safety standards on the construction project;
4. Compensation for the injury is recoverable under the Workers Compensation Act;
5. The design professional claiming immunity did not, by contract, specifically assume responsibility for safety practices; and

6. The construction design professional's liability does not arise from the negligent preparation of design plans or specifications.

*APPLICABILITY OF K.S.A. 2006 SUPP. 44-501(f)*

Although the district court's action prompting this interlocutory appeal was the denial of Anderson's summary judgment motion, Anderson states that the issue on appeal is: "When the facts are known, is the applicability of immunity granted by K.S.A. 44-501(f) to construction design professionals a question of fact for the jury or a question of law to be determined by the court?" Anderson then contends that the question presented requires statutory interpretation, which triggers a de novo standard of review. See *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 526, 113 P.3d 241 (2005).

The answer to Anderson's question is actually contained in its statement of our review standard. If the issue will be resolved by interpreting the statute, we are presented with a question of law. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006) ("The interpretation of a statute is a question of law over which this court has unlimited review."); *cf. Stark v. Mercantile Bank, N.A.*, 29 Kan. App. 2d 717, 721, 33 P.3d 609 (2000) (potential applicability of statutes of limitation or repose presents a question of law). That questions of law are decided by the court, rather than being submitted to the jury, is such a basic, fundamental, and deep-rooted premise as to require no further analysis here.

In the district court, and again on appeal, the Edwards family attempts to create the illusion of disputed material facts by characterizing legal determinations as factual issues. Appellees argue that the district court correctly opined that it could not determine the applicability of K.S.A. 2006 Supp. 44-501(f) until the jury determined certain "facts," such as: (1) whether Anderson was a construction design professional; (2) whether the accident occurred on the site of a construction project; and (3) whether the markings on the concrete pipe constituted design plans and specifications. However, at the summary judgment motion hearing, the attorneys were not arguing different versions of the facts, *i.e.*, what transpired. Rather, they were arguing whether the facts presented fit within

the statutory definitions, *i.e.*, did the legislature mean for the terms "construction design professional," "construction project," and/or "design plans or specifications" to apply to the case at hand.

The district court's ruling that the statutory interpretation questions should be presented to the jury was erroneous. However, the district court's refusal to determine the applicability of the immunity statute does not preclude us from doing so; an appellate court is not bound by the district court's interpretation of a statute. See *Bryan*, 281 Kan. at 159. Therefore, we will proceed to analyze K.S.A. 2006 Supp. 44-501(f) in light of the known and undisputed facts of this case.

*Construction design professional*

A construction design professional is defined as "any person who is an architect, professional engineer, landscape architect or land surveyor who has been issued a license by the state board of technical professions." K.S.A. 2006 Supp. 44-508(k). Anderson and its representative who marked on the concrete pipe both fit that definition. Nothing is in dispute which would affect the determination that Anderson is a construction design professional.

*Retained to perform professional services on a construction project*

Elsewhere in our statutes, the "practice of engineering" is defined, in relevant part, as "any service or creative work, the adequate performance of which requires engineering education, training and experience in the application of special knowledge of the mathematical, physical and engineering sciences to such services or creative work as consultation, investigation, evaluation, planning and design of engineering works and systems." K.S.A. 74-7003(i). Crossland retained Anderson to test the wire reinforcement and strength of the defective pipe. Obviously, such testing required Anderson to employ its specialized engineering knowledge. Therefore, we find that Anderson was retained to perform professional services.

The Edwards family argues that the pipe testing was not part of the original sewer project, but rather that particular construction project was completed upon the replacement of the defective pipe,

prior to the testing accident. Specifically, the family contends that "[t]he testing of the failed concrete pipe was a project in and of itself for the alleged benefit of Crossland Construction and Anderson Engineering." Anderson counters that the accident site had been used as a staging and storage area during the original project and it had not lost its character as a construction site at the time of the accident.

We perceive that a determination of whether the pipe testing was part of the original construction contract or a subsequent, new construction project is immaterial. The relevant parties in this appeal are Anderson, Crossland, and Crossland's employee. Anderson's marking on the pipe to designate how it would be cut and Crossland's cutting of the pipe were part of a "construction project" within the meaning of K.S.A. 2006 Supp. 44-501(f). Moreover, the location of the accident was a "site" of the pipe testing construction project, or subproject, as the case may be.

*Noncompliance with safety standards*

The immunity granted by K.S.A. 2006 Supp. 44-501(f) is from liability for "any injury resulting from the employer's failure to comply with safety standards on the construction project." Anderson's brief recites that the Occupational Safety and Health Administration (OSHA) cited Crossland for two serious safety violations following the accident. However, as the Edwards family points out, those OSHA citations do not necessarily establish causation, *i.e.*, that Edwards' death *resulted* from Crossland's failure to comply with OSHA safety standards.

We perceive the potential remains for a factual issue as to whether Edwards' injuries resulted from Crossland's noncompliance with safety standards. That issue was not addressed at the summary judgment hearing. In fact, Anderson's attorney specifically stated that "this is not a motion that asks [the court] to determine what the proximate cause of this accident was. We are not asking the court to rule on that."

*Injury compensable under Workers Compensation Act*

The parties do not dispute that the Edwards family collected workers compensation benefits, satisfying that element of the immunity statute.

*Assumption of responsibility*

Crossland and Anderson did not have a written contract for the pipe testing project. Further, there is nothing in the record which would suggest that Anderson specifically assumed responsibility for safety practices in its oral contract with Crossland. Obviously, Anderson maintains that it did not assume such a responsibility, and appellees have not controverted that fact.

*Negligent preparation of design plans or specifications*

Anderson acknowledges that any liability flowing from its negligence in preparing design plans or specifications is exempted from the immunity statute. It contends, however, that the markings on the concrete pipe were not design plans or specifications and that the case clearly presents a dispute over workplace safety practices, rather than an action for professional liability.

As Anderson points out, the phrase "design plans and specifications" is not statutorily defined in the Workers Compensation Act. It suggests that the common understanding in the construction industry is that those terms refer to blueprint drawings and written specifications for the quantity and quality of materials. Accordingly, Anderson concludes that the yellow marks on the concrete pipe do not fit within the plain meaning of design plans or specifications. We disagree.

Anderson was charged with the responsibility of testing the pipe. In order to perform its professional responsibilities, Anderson required that the concrete pipe be cut into four pieces and gave specific directions on the location of the cut lines. We perceive no appreciable distinction between providing the specifications for pipe cutting through a professional drawing or by physically marking on the pipe. Therefore, we find that Anderson's markings on the concrete pipe were design plans or specifications within the purview of K.S.A. 2006 Supp. 44-501(f).

*Summary*

Anderson was a construction design professional retained to perform professional services on a construction project, and its representative performed professional duties on the site of the construction project. Anderson's marking of cut lines on the concrete

pipe was a design plan or specification. Edwards suffered injuries during the construction project on which his employer, Crossland, failed to comply with safety standards. The injuries were compensable under the Workers Compensation Act. Anderson did not contractually assume responsibility for safety practices on the construction site.

### SUMMARY JUDGMENT

The order giving rise to this appeal was a denial of Anderson's motion for summary judgment. Even though the district court erred in refusing to consider the applicability of K.S.A. 2006 Supp. 44-501(f) to the uncontroverted facts, we can affirm the court's order if the result is correct. See *Via Christi Health System, Inc.,* 279 Kan. at 525 (reason given by district court immaterial if result correct).

" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citation omitted.]' *Mitchell v. City of Wichita,* 270 Kan. 56, 59, 12 P.3d 402 (2000) (quoting *Bergstrom v. Noah,* 266 Kan. 847, 871-72, 974 P.2d 531 [1999])." *State ex rel. Stovall v. Reliance Ins. Co.,* 278 Kan. 777, 788, 107 P.3d 1219 (2005).

"[S]ummary judgments are to be granted with caution in negligence actions. [Citation omitted.]" *Fettke v. City of Wichita,* 264 Kan. 629, 632, 957 P.2d 409 (1998). "Nevertheless, a defendant is entitled to summary judgment in a negligence case if the defendant shows the claim is supported by no evidence indicating negligence. [Citation omitted.]" *Legleiter v. Gottschalk,* 32 Kan. App. 2d 910, 913, 91 P.3d 1246, *rev. denied* 278 Kan. 846 (2004).

Anderson contends that the accident would not have occurred but for Crossland's failure to perform the cutting in accordance

with safety standards, such as blocking the pipe to prevent its rolling. In other words, the death resulted from the employer's failure to comply with safety standards on the construction project.

The Edwards family, on the other hand, blames the accident on Anderson's insistence that the concrete pipe be cut lengthwise, which it contends caused the pipe to split. In other words, Anderson's negligent design plan or specification was a cause of Edwards', injuries.

As we noted above, at this point in the proceedings, there appears to be a genuine material dispute as to whether the proximate cause of Edwards' death was Crossland's failure to comply with safety standards or Anderson's negligence in preparing the design plan or specification for cutting the pipe. Therefore, summary judgment was inappropriate, and the denial of Anderson's motion is affirmed.

Affirmed.