NOT DESIGNATED FOR PUBLICATION

No. 127,315

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MRB, LLC,
*Appellee*,

v.

GARY SIPPLE and ANNETTE SIPPLE,
*Appellants*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Submitted without oral argument. Opinion filed March 7, 2025. Affirmed.

*Gary Sipple* and *Annette Sipple*, appellants pro se.

*Vincent M. Cox*, of Cavanaugh, Biggs & Lemon, P.A., of Topeka, for appellee.

Before HILL, P.J., MALONE and CLINE, JJ.

PER CURIAM: MRB, LLC (MRB) purchased a residence at a sheriff's sale and successfully petitioned to evict Gary and Annette Sipple after they refused to vacate. The Sipples now challenge the district court's decision granting judgment for possession of the residence in favor of MRB. We find the district court had jurisdiction over the case, and MRB had standing to sue. We also agree with the court's conclusion that MRB's 30-day notice to vacate was not forged, and therefore affirm the court's judgment. We find the rest of the Sipples' arguments are unpreserved.

1

## FACTUAL AND PROCEDURAL BACKGROUND

MidFirst Bank foreclosed on real property in Topeka, Kansas, naming the Sipples and others as defendants. The district court granted MidFirst a judgment of foreclosure which was not appealed and MRB purchased the property at a sheriff's sale. Since the Sipples continued to reside at the property even after the redemption rights expired, MRB served them with a 30-day notice to vacate by attaching it to the door of the property. Kelsey Godspeed, the owner of MRB, filled out a 30-day notice form given to him by Jared Muir, an attorney Godspeed hired for the eviction process. Godspeed completed the form himself and signed the document. At the bottom of the notice, Godspeed typed "Contact Information for Representing Attorney" and listed Muir's name and contact information.

The Sipples still did not move out, so MRB petitioned to evict them. The Sipples responded by stating the property was held in trust, there was a pending federal court case about "Estate Embezzlement, that MRB, LLC, will be a[]part of," the Sipples had filed a mechanics lien and Uniform Commercial Code (UCC) liens on the property after the foreclosure judgment was entered, and MRB committed fraud "by producing a document which was created fraudently [*sic*]."

After a bench trial, the district court found that MRB was the legal and rightful owner of the property. In its journal entry of judgment, the court granted MRB's petition for eviction and ordered the Sipples to leave the property. The Sipples appeal this decision.

## REVIEW OF THE SIPPLES' APPELLATE CHALLENGES

On appeal, the Sipples raise several issues. They contend (1) state courts lack jurisdiction over their case because they are beneficiaries of tribal protections, (2) MRB

lacks standing because, as a corporation, it is a legal fiction and it did not demonstrate that it suffered an actual or imminent injury, (3) MRB entered a forged document at trial along with documents barred by the hearsay rule, and (4) the trial judge should have been disqualified from the case based on judicial bias and conflicts of interest.

To begin, the Sipples include many appendix attachments to their brief that are not located in the record on appeal, including:

(1) A document that declares "Sipp's Trust Tribe" as a "First Nation people" who are "a sovereign Indian nation." The document, signed by "Chief Gary Sipple Bey" and "Annette Sipple" states Sipp's Trust Tribe "invoke[s] and affirm[s] all protections afforded to sovereign Indian nations under the United States Constitution";

(2) A historical document on a treaty between the United States and Creek Nation;

(3) An itemized list of labor completed by "SIPPS HVAC" that "is a constructive claim within the mechanics lien being submitted"; and

(4) A document entitled "Declaration of Trust" that purports to establish a living trust for Gary Sipple.

This is problematic because "an appendix is limited to containing extracts from the record on appeal and cannot serve as a substitute for the record itself." *Edwards v. Anderson Engineering, Inc.*, 284 Kan. 892, 895, 166 P.3d 1047 (2007); see Kansas Supreme Court Rule 6.02(b) (2024 Kan. S. Ct. R. at 36) ("[A]n appellant's brief may contain an appendix—without comment—consisting of limited extracts from the record on appeal which the appellant considers to be of critical importance to the issues to be decided. The appendix is for the court's convenience and is not a substitute for the record itself."); see also Kansas Supreme Court Rule 6.03(b) (2024 Kan. S. Ct. R. at 37) (applying Rule 6.02 to an appellee's brief). Not only are we prohibited from considering these documents in

3

rendering our decision, but other than the first document, we fail to see the relevance of these documents to any of the arguments the Sipples make on appeal.

*The Sipples' hearsay arguments are unpreserved.*

The Sipples claim "other documents Vincent Cox [counsel for MRB] presented were hearsay as he had no personal knowledge about those documents." They do not identify these documents or cite where they objected to this evidence at trial. Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) requires an appellant to cite "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on" in the district court. See *State v. Paredes*, 34 Kan. App. 2d 346, 348, 118 P.3d 708 (2005) (finding that generally this court will not consider claims which have never been presented to the district court for a ruling). Or "[i]f the issue was not raised below," the brief must include "an explanation why the issue is properly before the court." Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36.)

But a review of the trial transcript shows that the Sipples never made a hearsay objection during the entire trial. In fact, they told the district court at trial that they did not have any objections to any of MRB's exhibits. MRB correctly argues the Sipples' hearsay argument should be waived. K.S.A. 60-404 requires parties to make a specific and timely objection at trial to preserve evidentiary issues for appeal. *State v. Crudo*, 318 Kan. 32, 38, 541 P.3d 67 (2024). Since the Sipples did not object to any document being hearsay, we cannot review this claim because it is unpreserved for appeal.

*The Sipples' claim of judicial bias is unpreserved.*

The Sipples also allege Judge Teresa L. Watson, who presided over the trial, had judicial bias and conflicts of interest. They do not articulate how they believe Judge

Watson was biased or what conflicts of interest she had. Instead, they simply cite to an exchange between Judge Watson and themselves at trial.

At the end of the proceedings, the Sipples asked Judge Watson what her name was, and she responded. Annette Sipple responded, "Thank you," and Gary Sipple said, "Wow." Judge Watson, in response, told them, "And I assume you're laughing because you've seen my name on some of the other pleadings. Judge Christopher was your judge on the foreclosure." Gary Sipple replied, "Yeah," to which Judge Watson answered, "She retired and then I had to take care of her cases for a while until the next judge came along. So I did see that when I admitted these exhibits today. I did sign some of those later documents." Judge Christopher signed the journal entry of judgment of foreclosure and Judge Watson signed two documents, the order of sale and the order confirming sheriff's sale and directing the clerk to disburse funds.

But the Sipples did not raise any issues of judicial bias or conflict of interest before the district court, so they are unpreserved for appeal. In *In re Marriage of Bush*, 62 Kan. App. 2d 284, 513 P.3d 494 (2022), the appellant argued the district court had a conflict of interest throughout the proceedings. This court noted:

> "A litigant may argue that a judge's recusal is required in accordance with (1) the statutory factors set forth in K.S.A. 20-311d(c); (2) the standards of the Kansas Code of Judicial Conduct, Supreme Court Rule 601B, Canon 2, Rule 2.2 (2022 Kan. S. Ct. R. at 495); and (3) the Due Process Clause of the Fourteenth Amendment to the United States Constitution.
>
> "A party or a party's attorney may move for a change of judge based on the belief 'that the judge to whom an action is assigned cannot afford that party a fair trial in the action.' K.S.A. 20-311d(a). 'Under K.S.A. 20-311d, a party must first file a motion for change of judge; if that motion is denied, then the party must immediately file a legally sufficient affidavit alleging grounds set forth in the statute.' Moreover, our Supreme Court has refused to consider bias claims on appeal when the claimant has failed to follow the proper statutory procedure, concluding that a claimant's failure to file an

5

affidavit barred it from evaluating the judicial bias claim. [Citations omitted.]" 62 Kan. App. 2d at 291-92.

This court ultimately declined to consider the appellant's judicial bias claims because there was nothing in the record showing the appellant followed the statutory procedure by filing an affidavit setting forth his allegations of judicial bias. 62 Kan. App. 2d at 291-92. The same conclusion is appropriate here. Nothing in the record indicates the Sipples followed K.S.A. 20-311d's procedure. Nor do they mention this statute or recognize that they are raising this issue for the first time on appeal. Rather, they cite 28 U.S.C. § 144, which states that judges should disqualify themselves if they have "a personal bias or prejudice either against him or in favor of any adverse party." This is not the applicable authority in this context since 28 U.S.C. § 144 is a federal statute. Instead, K.S.A. 20-311(d) controls. And the Sipples did not follow K.S.A. 20-311(d)'s procedures. Therefore, we cannot review their judicial bias argument because it is unpreserved for review.

*The district court had subject matter jurisdiction over the eviction case.*

The Sipples first appear to argue state courts lack jurisdiction over their case because they are beneficiaries of tribal protections. But they never expressly state that because they are allegedly tribal members, state courts do not possess jurisdiction over their case. Rather, they contend they are members of a tribe, the federal government has a trust responsibility to that tribe, and that in *McGirt v. Oklahoma*, 591 U.S. 894, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020), "the Supreme Court confirmed state courts['] lack of jurisdiction."

Assuming the Sipples intended to argue that state courts do not possess jurisdiction in their case, their arguments are nevertheless unconvincing because they

have not established themselves as members of a state or federally recognized tribe, nor do they correctly interpret *McGirt*.

The issue of subject matter jurisdiction and the associated issue of statutory interpretation present questions of law over which an appellate court's review is unlimited. *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 369, 371, 130 P.3d 560 (2006). "Subject matter jurisdiction is the power of the court to hear and decide a particular type of action." *State v. Matzke*, 236 Kan. 833, 835, 696 P.2d 396 (1985).

The Sipples contend they are members of "Sipp's Tribe Trust." According to a document they attached to their brief appendix, entitled, "DECLARATION/ PROCLAMATION OF INDIAN SOVEREIGNTY AND SELF-GOVERNMENT," they have proclaimed the "Sipp's Trust Tribe" to possess an "inherent right to self-government." This document was not apparent in the record nor do the Sipples cite to its location in the record. In their prayer for relief, the Sipples ask us to return them to their "tribal property."

They argue that because they are a tribe, the federal government has a trust responsibility with them. And they believe that since they are members of the "Sipp's Tribe," they "have immunity from state prosecution" and "state courts lack . . . jurisdiction" under *McGirt*. There are at least three issues with this argument.

First, the Sipples have not established that "Sipp's Trust Tribe," "Sipp's Tribe Trust," or "Sipp's Tribe" is a state or federally recognized tribe. There are no documents in the record confirming this status. To become a federally recognized tribe, applicants must submit a petition to the United States Department of Interior in accordance with 25 C.F.R. § 83 (2024). As part of this process, the petitioner must be "identified as an American Indian entity on a substantially continuous basis since 1900." 25 C.F.R.

§ 83.11(a). According to the appendix document, "Sipp's Trust Tribe" was created on June 5, 2024.

It is true that "federally recognized Indian tribes benefit from the trust relationship between the federal government and Indian tribes." Fletcher, *Politics, History, and Semantics: The Federal Recognition of Indian Tribes*, 82 N. D. L. Rev. 487, 489-90 (2006). And the Sipples correctly note that federally recognized Indian tribes possess a trust relationship with the federal government. They are also right that the Court held in the seminal case, *Cherokee Nation v. Georgia*, 30 U.S. 1, 13, 8 L. Ed. 25 (1831), that tribes are "domestic dependent nations." See also *Diepenbrock v. Merkel*, 33 Kan. App. 2d 97, 99, 97 P.3d 1063 (2004) ("Indian reservations are separate and distinct nations inside the boundaries of the state of Kansas.").

But the Sipples have not cited the record, nor does the record appear to possess, any document showing the "Sipp's Trust Tribe" is a federally recognized tribe. "An adequate factual record is required to conduct meaningful appellate review of an issue." *State v. Carr*, 314 Kan. 744, Syl. ¶ 19, 502 P.3d 511 (2022). Given that they do not furnish an adequate factual record to determine whether they are members of a federally recognized Indian tribe, their argument is unpersuasive.

Second, the State of Kansas did not prosecute the Sipples. This is a civil case where MRB, not the State, brought an eviction lawsuit against them and other defendants. So their claim that the State is prosecuting them is incorrect.

Third, the Sipples incorrectly assert that *McGirt* determined "state courts lack . . . jurisdiction." *McGirt* concerned whether Congress disestablished the Creek reservation and consequently, whether that means the State can prosecute Indians for crimes under the Major Crimes Act that are committed within that reservation. Although *McGirt*

8

concerns state court jurisdiction in that context, it does not apply here nor do the Sipples explain how it would.

Subject matter jurisdiction exists in this instance because this is a case involving real estate and district courts have the power to hear and decide real estate matters. District courts "routinely exercise their powers to handle matters relating to judgments involving real estate located within their judicial district. This is the essence of subject matter jurisdiction." *First Tribune Ins. Agency, Inc. v. Turner*, No. 108,188, 2014 WL 2401398, at *6 (Kan. App. 2014) (unpublished opinion) (analyzing whether a sheriff's sale was void because the Greeley County District Court lacked subject matter jurisdiction). The Sipples have not provided persuasive legal authority to support their conclusion.

We therefore find the district court possessed subject matter jurisdiction to hear this case.

*MRB has standing.*

The Sipples have two sections in their brief that appear to concern standing. Their first section argues that MRB is "a fictious entity" that cannot have standing "over God[']s creation." And they claim that MRB "is a legal fiction [that] can't walk, talk or perform any tasks, moreover it could not hire Vincent Cox." Their second section is almost entirely filled with caselaw citations and concludes "plaintiffs must show an actual or imminent injury to establish standing."

Under the Kansas case-or-controversy requirement, courts require that (1) parties have standing; (2) issues not be moot; (3) issues be ripe, having taken fixed and final shape rather than remaining nebulous and contingent; and (4) issues not present a political question. *Rivera v. Schwab*, 315 Kan. 877, 902, 512 P.3d 168 (2022).

9

Justiciability includes both prudential and jurisdictional requirements. Standing is part of justiciability and is also a component of subject matter jurisdiction. Because standing is jurisdictional, it can be raised for the first time on appeal. *In re L.L.*, 315 Kan. 386, 390, 508 P.3d 1278 (2022). Standing is a question of law over which an appellate court's scope of review is unlimited. 315 Kan. at 390.

Under Kansas' traditional, two-part standing test, a party must demonstrate they have suffered a cognizable injury and that there is a causal connection between the injury and the challenged conduct. A party establishes a cognizable injury—i.e., an injury in fact—when they suffer some actual or threatened injury as a result of the challenged conduct. *League of Women Voters of Kansas v. Schwab*, 317 Kan. 805, 813, 539 P.3d 1022 (2023). Sometimes, Kansas courts have referenced the federal "standing elements that 'a party must present an injury that is concrete, particularized, and actual or imminent; the injury must be fairly traceable to the opposing party's challenged action; and the injury must be redressable by a favorable ruling.'" *Gannon v. State*, 298 Kan. 1107, 1123, 319 P.3d 1196 (2014). But the Kansas Supreme Court in *League of Women Voters of Kansas* recently reaffirmed that the standing test under Kansas law is the two-part Kansas test. See 317 Kan. at 813.

Primarily, the Sipples believe that MRB cannot establish standing because it is a legal fiction and the Sipples "have done no harm to M[R]B." It is true that "[a] corporation is an artificial being, invisible, intangible, and existing only in contemplation of law." *Dean Operations, Inc. v. One Seventy Assocs.*, 257 Kan. 676, 680, 896 P.2d 1012 (1995). Even so, corporations have the constitutional and statutory right to sue and be sued. *Babe Houser Motor Co., Inc. v. Tetreault*, 270 Kan. 502, 503, 14 P.3d 1149 (2000); Kan. Const. art. 12, § 6; K.S.A. 17-6102(b). Corporations are real parties in interest and have standing to sue if "'by the substantive law, [it] has the right sought to be enforced.'" *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 30, 59 P.3d 1003 (2002) (quoting *Torkelson v. Bank of Horton*, 208 Kan. 267, 270, 491 P.2d 954 [1971]).

MRB has the constitutional and statutory right to sue the Sipples and, as the owner of the property the Sipples refused to vacate, it suffered an injury and had a right to be enforced. And MRB showed the causal connection requirement was met because its right to possess the property was connected to the Sipples' conduct of refusing to leave the property. Kansas' standing requirements have been met in this case.

As a final matter, the Sipples claim they "have exclusive standing and the highest claim pursuant to their certificated security pursuant to U.C.C. 8-102, entitlement holder, as well as U.C.C. 3-104 pursuant to negotiable instrument." Section 8-102 of the Uniform Commercial Code is a definition section which describes various words, including entitlement holder. It states an entitlement holder "means a person identified in the records of a securities intermediary as the person having a security entitlement against the securities intermediary. If a person acquires a security entitlement by virtue of Section 8-501(b)(2) or (3), that person is the entitlement holder." U.C.C. 8-102(a)(7) (1994). Similarly, U.C.C. 3-104 (2002) describes what negotiable instruments are. The Sipples fail to explain how the Uniform Commercial Code applies to their case, why these sections are meaningful, or how standing is affected by these provisions. We therefore disregard their reliance on the Uniform Commercial Code to support their appeal.

For these reasons, we find MRB had standing to bring an eviction action against the Sipples.

*The district court correctly found MRB did not forge its 30-day notice to vacate.*

The Sipples next argue the 30-day notice MRB entered into evidence was a forged document. Below, the district court denied their "Facts in Verification Fraud Upon Court Occurred" motion which alleged MRB forged Jared Muir's name on the 30-day notice. The court found that there was not "any fraud committed today, whether it be upon the

11

Court, by attorneys, or upon Mr. and Mrs. Sipple. It's—it—there's just no evidence of that here."

When reviewing a mixed question of fact and law, an appellate court applies a bifurcated review standard. The appellate court generally reviews the factual findings under the substantial competent evidence standard, disregarding any conflicting evidence or other inferences that might stem from the evidence. The conclusions of law based on those findings are subject to unlimited review. *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017). Substantial competent evidence is relevant evidence that provides a substantial basis of fact from which the issues can be reasonably determined. *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 709, 216 P.3d 170 (2009).

Although the Sipples maintain the 30-day notice is a forged document, they fail to explain on appeal why they believe the document is forged. Issues not adequately addressed in briefing are treated as waived or abandoned. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). Since they only offer conclusory statements about the document, their failure to explain their argument, alone, is sufficient grounds for us to consider this issue abandoned on appeal.

We note, however, that before trial, the Sipples filed a motion entitled:  "Facts in Verification Fraud Upon Court Occurred." This motion alleged many things, but pertinently, it argued:  "Plaintiff's wrote a letter claiming Jared Muir was their lawyer, the mistreatment evolved into terrorizing Defendants with threats and blatant harassment, and a 30[-]day eviction, which Plaintiffs fabricated and forged Jared Muir's name on." At trial, Mr. Sipple cross-examined Godspeed about this issue. Mr. Sipple asked Godspeed, "The document—30-day Notice to Vacate from Jared Muir, you admitted to, I guess, forging his name or writing a name on there." Godspeed responded, "I didn't forge anything. . . . I put his information there because he was my representing attorney. I wanted you to have someone to contact in the eviction in case you had an argument

against the 30-day eviction." Later, Mr. Sipple asked Godspeed, "So the signature that you put, that's truly not your signature . . . [?]" And Godspeed replied, "That's 100 percent my signature."

The exchange continued. Mr. Sipple questioned Godspeed whether, "You wanted us, in the house, to believe that Jared [Muir] wrote this out?" To which Godspeed responded, "No. I wrote that." A variation of this exchange carried on. In essence, it appears the Sipples believed that since Godspeed acquired the 30-day notice form from Muir, that Godspeed forged the document when he wrote a signature on it.

During direct examination, Mr. Sipple testified why he and his wife  believed the 30-day notice was forged:

> "Now for us, the document is dishonest. I mean, if you were going to put a 30-day notice, you should have said who you were. So then, we could have contacted them and then have maybe a discussion and figure some things out. But they used Jared Muir, his information, fraudulently. Forged it, basically, the way I look at it, again, for unjust enrichment."

The Sipples may feel misled by the 30-day notice because the signature on the notice is not legible. It is impossible to determine names or even letters from the signature. But, directly below the signature line, it states:  "Signature, A member of MRB." After what looks like a couple of hard returns on the notice, it states:  "Contact Information for Representing Attorney," and lists Muir's contact information. Since the signature is identified as someone who is a part of MRB and the notice indicates Muir is the representing attorney, a reasonable conclusion would be that the signature is not Muir's. There is no evidence in the record to suggest Muir is a member of MRB or why the Sipples believe he is.

The district court recognized that the Sipples "have some actions going on in federal court that have to do with allegations of fraud, and forgery, and many other things in connection with those who were involved in the foreclosure." At trial, Mr. Sipple had told the court, "I have a letter which you have, that Jared Muir says he did not authorize that we use his name and that was in federal court as well." The court found this document unpersuasive and noted "that this document from Mr. Muir is part of the pleadings and that looks like something that you all must have put together in order to allow him to get out of the federal case, but he doesn't say in that document that anyone forged his signature."

Indeed, in the document, Muir stated:

"I did not deliver the 30 day notice. I did not attach the 30 day notice to the home. I have never been to the home located [address omitted]. I am not a member of MRB, LLC. I did not authorize the use of my name on the 30 day notice."

Godspeed's direct-examination confirmed Muir's letter. When asked about who prepared the 30-day notice, Godspeed stated, "I got—from Jared Muir, I got a document, and then I actually filled it out, put it in there, and then I added the part on the bottom to contact my representing attorney, Jared Muir, about this eviction." Godspeed later explained that even though the form informed the Sipples could contact Muir as Godspeed's representing attorney, the signature on the 30-day notice was Godspeed's.

There is substantial competent evidence to support the district court's conclusion to deny the Sipples' motion and find there was no evidence of fraud. Godspeed's testimony persistently reflected that he drafted and signed the 30-day notice. He admitted he included Muir's contact information at the bottom of the notice for the Sipples to reach out to Muir for potential eviction matter questions. Muir's letter also confirms that he did

14

not sign or draft the 30-day notice. Both pieces of evidence corroborate that Godspeed signed the document.

The only conflicting evidence presented at trial was Mr. Sipple's direct-examination testimony where he stated that he believed the document was forged. But we cannot consider this conflicting evidence in evaluating whether substantial competent evidence supports the district court's finding. See *Gannon*, 305 Kan. at 881. Godspeed's testimony, Muir's letter, and the 30-day notice itself provides a substantial basis of fact from which this issue can be reasonably determined. See *Frick Farm Properties*, 289 Kan. at 709. The three pieces of evidence provide the court with a reasonable basis to conclude Godspeed did not forge Muir's name since Muir confirmed he did not write the letter and Godspeed stated he did not sign Muir's signature.

We therefore find that substantial competent evidence supports the district court's conclusion that the 30-day notice was not fraudulent.

Affirmed.